

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00540-CV

**PROGRESSIVE DIRECT INSURANCE COMPANY**,
Appellant

v.

Christopher **MARR**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-CI-23530
Honorable Rosie Alvarado, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:        Lori I. Valenzuela, Justice
               Adrian A. Spears II, Justice
               H. Todd McCray, Justice

Delivered and Filed: April 8, 2026

REVERSED AND RENDERED

This accelerated interlocutory appeal arises from the denial of a special appearance. Appellant Progressive Direct Insurance Company ("Progressive Direct") challenges the trial court's exercise of personal jurisdiction over it in a suit arising from an underinsured motorist vehicle claim stemming from an accident that occurred in Texas. We reverse the trial court's order and render judgment dismissing the claims against Progressive Direct for lack of personal jurisdiction.

## BACKGROUND

Appellee Christopher Marr, a resident of the state of Washington, purchased an automobile insurance policy from Progressive Direct, an Ohio-based insurer not licensed to sell insurance in Texas. The policy provided uninsured/underinsured motorist ("UM/UIM") coverage and included a provision extending coverage to accidents occurring outside the insured's home state.

While visiting and caring for his mother in San Antonio, Texas, Marr was involved in an automobile collision. Marr subsequently filed suit in Texas against Progressive Direct seeking a declaratory judgment regarding the denial of his claim for underinsured motorist coverage under the policy. Marr asserted claims for breach of contract, breach of the duty of good faith and fair dealing, bad faith, and violations of the Texas Deceptive Trade Practices Act.

Progressive Direct timely filed a special appearance contesting personal jurisdiction. In its special appearance, Progressive Direct asserted that it lacks the minimum contacts with Texas necessary to support the exercise of personal jurisdiction because it is an Ohio company that does not sell or market insurance policies in Texas, is not licensed in Texas, maintains no offices in Texas, and does not conduct business in Texas.

After conducting a hearing, the trial court signed an order denying Progressive Direct's special appearance. Progressive Direct then filed this accelerated interlocutory appeal.

## PERSONAL JURISDICTION

On appeal, Progressive Direct argues the trial court erred in denying its special appearance because (1) Marr failed to plead sufficient jurisdictional allegations; (2) Progressive Direct lacks the minimum contacts with Texas necessary for the exercise of personal jurisdiction under Texas's long-arm statute; (3) the requirements for both specific and general jurisdiction were not satisfied; and (4) exercising jurisdiction would offend traditional notions of fair play and substantial justice.

Because the issue is dispositive, we focus on whether Progressive Direct had the requisite minimum contacts with Texas to satisfy constitutional due process.

"Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) our long-arm statute authorizes it and (2) doing so comports with federal and state constitutional due process guarantees." *Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024). The Texas long-arm statute permits a trial court to exercise personal jurisdiction over a defendant who "does business in this state," which is defined to include a nonresident defendant who "commits a tort in whole or in part in this state." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 17.042(2)). "However, [even] allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). "[B]ecause Texas's long-arm statute extends personal jurisdiction as far as the federal constitutional requirements allow, the 'federal due process requirements shape the contours of Texas courts' jurisdictional reach.'" *Goldstein*, 690 S.W.3d at 294 (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)).

A state's exercise of personal jurisdiction comports with federal due process if (1) the nonresident defendant has "minimum contacts" with the state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). A nonresident defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *M & F Worldwide Corp.*, 512 S.W.3d at 885.

"Specific jurisdiction exists when (1) the defendant has 'made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities [in the state],' and (2) the defendant's potential liability arose from or is related to those contacts." *In re Christianson*

*Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007)) (alterations in original). "To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum state." *Id*. "Only the defendant's contacts are relevant, not the unilateral activity of another party or a third person." *Id*. Plus, the defendant's contacts "must be purposeful rather than random, fortuitous, or attenuated." *Id*. (citation omitted). A "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005).

General jurisdiction exists when a defendant's contacts with the forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 797 (Tex. 2002); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). "When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state." *Guardian Royal,* 815 S.W.2d at 228. "General jurisdiction requires that a defendant be 'essentially at home' in the forum state." *In re Christianson Air Conditioning*, 639 S.W.3d at 679 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

### A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law, which we review under a de novo standard. *BMC Software*, 83 S.W.3d at 794. In deciding the jurisdictional issue, the trial court must frequently resolve questions of fact. *Id*. "When, as here, the trial court does not issue findings of fact and conclusions of law [with its special appearance

ruling], we imply all relevant facts necessary to support the judgment that are supported by the evidence." *M & F Worldwide Corp.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2012)); *see also BMC Software*, 83 S.W.3d at 795 (same).

### B.    Special Appearance Procedures

The plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the reach of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff sufficiently pleads these jurisdictional allegations, the burden then shifts to the defendant to negate all the alleged bases of personal jurisdiction. *Id*. "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute," "the defendant need only prove that it does not live in Texas to negate jurisdiction." *Id*. at 658-59.

"The defendant can negate jurisdiction on either a factual or legal basis." *Id*. at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id*. "Legally, the defendant can show that even if the plaintiff's alleged facts are true," (1) the evidence "is legally insufficient to establish jurisdiction"; (2) "the defendant's contacts with Texas fall short of purposeful availment"; (3) "for specific jurisdiction, [] the claims do not arise from the contacts"; or (4) "traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*.

### C.    Specific Jurisdiction Analysis

"When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation." *See Guardian Royal,* 815 S.W.2d

at 228. We must first determine whether Progressive Direct purposefully established minimum contacts with Texas; in other words, we consider whether there was a substantial connection between Progressive Direct and Texas arising from action or conduct of Progressive Direct purposefully directed toward Texas. *See id*. Here, Marr's presence in Texas resulted solely from his personal decision to travel to the state. Progressive Direct did not solicit business in Texas, issue the policy in Texas, insure a Texas resident, or insure a vehicle principally garaged in Texas. Instead, the insurance policy was issued outside Texas to a Washington resident for a vehicle insured and garaged in Washington. Further, Progressive Direct is incorporated and headquartered in Ohio, and it is not licensed to sell insurance in Texas. Nothing in the record reflects that Progressive Direct marketed, solicited, or sold this policy in Texas. The record is simply devoid of any evidence that Progressive Direct's conduct was purposefully directed to Texas.

Under Texas law, specific jurisdiction requires not only purposeful contacts with the forum but also a substantial connection between those contacts and the operative facts of the litigation. *See Moki Mac River Expeditions*, 221 S.W.3d at 585; *Guardian Royal,* 815 S.W.2d at 229-33. The operative facts of this case concern the formation of the insurance policy, the obligations created by that policy, and Progressive Direct's alleged failure to perform under its terms. The operative facts of this case do not concern the underlying automobile accident itself. While the accident in Texas may have triggered Marr's claim for underinsured motorist benefits, the accident itself is not the focus of the dispute between Marr and Progressive Direct. Rather, the litigation concerns whether Progressive Direct breached contractual obligations created by a policy issued outside Texas to a non-Texas insured.

Marr argues that because the policy has a provision that covers accidents occurring "in any state, territory or possession of the United States of America or any province or territory of

Canada," the accident in Texas was foreseeable. Marr relies on *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 229 (Tex. 1991), for the proposition that Texas regulatory interest in insurance should be a consideration and thus Marr may establish personal jurisdiction based upon a lesser showing of minimum contacts than would otherwise be required. In other words, Marr argues that it is foreseeable that accidents covered under the policy could occur in Texas. Although an automobile insurer may foresee that its insured may travel to other states, the Texas Supreme Court has made clear that foreseeability is merely one factor to consider in a minimum contacts analysis and will not alone support the forum state's exercise of personal jurisdiction. *See id*. at 227. To be subject to the jurisdiction of the forum state, the defendant must take an action "purposefully directed" to the forum state. *Id*. at 226-27. Again, the operative facts of this case concern the formation of the insurance policy, the obligations created by that policy, and Progressive Direct's alleged failure to perform under its terms. The operative facts do not concern the underlying automobile accident itself. Thus, we conclude there is no connection between Progressive Direct's forum contacts and the operative facts of the litigation.

### D.    General Jurisdiction Analysis

Marr also asserts that Texas has general jurisdiction over Progressive Direct due to its continuous and systematic contacts with Texas. "When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state." *Guardian Royal,* 815 S.W.2d at 228. The Supreme Court has explained that for a corporation, the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,'" but is instead "whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home

in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (quoting *Goodyear Dunlop*, 564 U.S. at 919) (alteration in original). In most cases, a corporation is "at home" only in its state of incorporation and the state where it maintains its principal place of business. *See id*. at 138-39.

Here, it is undisputed that Progressive Direct is incorporated in Ohio, not Texas. The record reflects that Progressive Direct maintains its principal place of business in Ohio, not Texas, and does not even maintain a registered agent in Texas. Because Progressive Direct was not incorporated in Texas and does not maintain its principal place of business in Texas, and because the record contains no evidence of contacts so continuous and systematic as to render it essentially at home in this state, we conclude that Progressive Direct is not subject to general personal jurisdiction in Texas. *See id.* at 137.

We note that Marr argues that Progressive Direct has been involved in other litigation in Texas and has, in those proceedings, represented that it conducts business in Texas. "[M]ere participation in a lawsuit does render a person subject to general jurisdiction." *Fisher v. Eagle Rock Custom Homes Inc.*, No. 14-18-00483-CV, 2020 WL 205975, at *6 (Tex. App.—Houston [14th Dist.] Jan. 14, 2020, no pet.). While we note that the Fourteenth Court of Appeals has held that "[v]oluntarily filing a lawsuit in a jurisdiction" can constitute "purposeful availment of the jurisdiction's facilities," the Fourteenth Court of Appeals has held that such conduct subjects "a party to personal jurisdiction in another lawsuit only when the lawsuits arise from the same general transaction." *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Even assuming the other litigation pointed out by Marr constitutes "some evidence" of Texas activity, Marr has not established that this dispute arises from or relates to those contacts. A review of the record reflects that Progressive Direct filed several subrogation

lawsuits that were not related in any way to this current action and do not arise from the same general transaction or facts at issue in this lawsuit. *See id*. (determining party subject to personal jurisdiction only where other litigation arose from the same general transaction). Nor has Marr shown these unrelated lawsuits were "continuous and systematic" as to render Progressive Direct "at home" in Texas. *See Daimler*, 571 U.S. at 138-39. Therefore, we conclude that Marr has not shown that any unrelated lawsuits give rise to either specific or general jurisdiction.

### E. Fair Play and Substantial Justice

Even if minimum contacts were marginally satisfied, Progressive Direct is not subject to personal jurisdiction in Texas if the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316; *M & F Worldwide Corp.*, 512 S.W.3d at 885. In determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, we consider, when appropriate, the following factors: (1) "the burden on the defendant"; (2) "the interests of the forum state in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several states in furthering fundamental substantive social policies." *Guardian Royal,* 815 S.W.2d at 232 (citing *Asahi Metal Indus. Co. v. California*, 480 U.S. 102, 113 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

In applying these factors, we conclude that the burden on Progressive Direct, an Ohio insurer not licensed to conduct business in Texas, to litigate a dispute involving a Washington insurance contract in Texas is substantial. Further, Texas's interest in adjudicating the dispute is limited because the controversy centers on the interpretation of an insurance policy formed outside

the state between non-Texas parties. Although the accident occurred in Texas, the dispute before us concerns contractual coverage obligations rather than the underlying tort liability arising from the collision. While Texas has a legitimate interest in adjudicating accidents occurring on its roadways, that interest does not override constitutional limitations when the dispute centers on contractual obligations formed entirely outside the state. By contrast, Washington has a significant interest in regulating insurance contracts issued to its residents, and Ohio has an interest in regulating insurers domiciled there. Those jurisdictions bear a far stronger connection to the contractual relationship at issue than Texas, a state where Marr happened to be visiting at the time of the accident. In considering these factors, we hold that Texas exercising jurisdiction over Progressive Direct would offend traditional notions of fair play and substantial justice.

## CONCLUSION

We conclude that Progressive Direct's contacts with Texas are insufficient to confer either specific or general jurisdiction and that subjecting Progressive Direct to personal jurisdiction in Texas would offend traditional notions of fair play and substantial justice. Accordingly, the exercise of personal jurisdiction over Progressive Direct does not comport with constitutional due process guarantees. We therefore reverse the trial court's order denying Progressive Direct's special appearance and render judgment dismissing the claims against Progressive Direct for lack of jurisdiction.

Adrian A. Spears II, Justice